**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| MidCountry Bank,<br><br>    Plaintiff and Counterclaim Defendant,<br><br>v.<br><br>Jack Rajchenbach, Chaim Rajchenbach, and Robert Hartman,<br><br>    Defendants and Counterclaim Plaintiffs,<br><br>v.<br><br>Avraham D. Kutoff,<br><br>    Counterclaim Defendant. | Case No. 15-cv-3683 (SRN/TNL)<br><br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Daniel N. Moak and Justin P. Weinberg, Briggs & Morgan, P.A., 80 South Eighth Street, Suite 2200, Minneapolis, MN 55402 for Plaintiff and Counterclaim Defendant MidCountry Bank.

Benjamin W. Hulse and Emily A. Ambrose, Blackwell Burke P.A., 431 South Seventh Street, Suite 2500, Minneapolis, MN 55415; Christopher G. Dean, McDonald Hopkins LLC, 600 Superior Avenue East, Suite 2100, Cleveland, OH 44114; and David A. Agay and Micah E. Marcus, McDonald Hopkins LLC, 300 N. LaSalle Street, Suite 2100, Chicago, IL 60654 for Defendants and Counterclaim Plaintiffs Jack Rajchenbach, Chaim Rajchenbach, and Robert Hartman.

John P. Loringer, Wilson Elser Moskowitz Edelman & Dicker, 740 N. Plankinton Avenue, Suite 600, Milwaukee, WI 53203; Marc L. Bogutz and William F. McDevitt, Wilson Elser Moskowitz Edelman & Dicker, Two Commerce Square, 2001 Market Street Suite 3100, Philadelphia, PA 19103 for Counterclaim Defendant Avraham D. Kutoff.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motion to Dismiss of Defendants Jack Rajchenbach, Chaim Rajchenbach, and Robert Hartman ("Rajchenbach Motion") [Doc. No. 31] and Counterclaim Defendant Avraham D. Kutoff's Motion to Dismiss Count IV ("Kutoff Motion") [Doc. No. 59-41].[1]  A hearing on the Motions was held on April 15, 2015.  (Hearing Tr. dated April 15, 2015 [Doc. No. 55].)  The Court denied the Rajchenbach Motion from the bench, with a written order to follow, and took the Kutoff Motion under advisement.  For the reasons set forth below, the Kutoff Motion is granted in part and denied in part.

I.   BACKGROUND

   A. Factual History[2]

Counterclaim Defendant Avraham D. Kutoff ("Kutoff") is the chief executive officer of Materials Processing Corporation ("MPC"), an electronics recycling business

---

[1] Originally, this matter was two separate cases, one involving Plaintiff MidCountry Bank's claims against Defendants Jack Rajchenbach, Chaim Rajchenbach, and Robert Hartman (collectively, "Defendants") (Case No. 15-cv-3683) and another involving the Defendants' claims against MidCountry Bank and Avraham D. Kutoff (Case No. 15-cv-4193).  After a series of removals and transfers, this Court ordered the cases consolidated under case number 15-cv-3683.  (Amended Order Consolidating Cases [Doc. No. 58].)  The Clerk of Court subsequently docketed the record of case number 15-cv-4193 as a single ECF entry with each document from that case as an attachment.  (See Doc. No. 59.)  The Court cites to these documents by the document number 59 followed by the attachment number (e.g., Doc. No. 59-1).  Also, for simplicity's sake, the Court refers to Defendants' claims against MidCountry Bank and Avraham D. Kutoff as counterclaims, despite there being separate complaints.  (See Doc. Nos. 28 and 59-29.)

[2] When deciding a motion to dismiss for failure to state a claim, "a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant."  U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp., 690 F.3d 951, 955 (8th Cir. 2012).  Thus, the Court recounts the facts as set forth by MidCountry Bank and Defendants Jack Rajchenbach, Chaim Rajchenbach, and Robert Hartman.

operating in Minnesota. (Am. Compl. ("Rajchenbach Compl.") at ¶¶ 9–10 [Doc. No. 59-29].) MPC is a wholly owned subsidiary of SK International, Inc ("SK"). (Id. at ¶ 10.) In 2010, Kutoff approached Jack Rajchenbach ("J. Rajchenbach") about investing in MPC and J. Rajchenbach agreed to become a shareholder in SK. (Id. at ¶¶ 12–13.) Two years later, Kutoff approached Chaim Rajchenbach ("C. Rajchenbach") and Robert Hartman ("Hartman") (collectively with J. Rajchenbach, "Defendants") about investing and they too became shareholders in SK. (Id. at ¶ 14.) Kutoff ran the day-to-day operations of MPC while Defendants were "passive investors in the business." (Id. at ¶ 15.)

Shortly after C. Rajchenbach and Hartman invested, MPC suffered a series of "significant financial setbacks related to operational difficulties." (Id. at ¶ 16.) In 2014, Kutoff asked MidCountry Bank ("MidCountry"), MPC's lender, "for a specific financial accommodation to fund certain of MPC's critical expenses related to its ongoing operational difficulties." (Id. at ¶ 18.) Kutoff represented MPC and SK (collectively, the "Borrower") in all the negotiations with MidCountry. (Id. at ¶ 19.)

Ultimately, the Borrower and MidCountry agreed to an arrangement whereby MidCountry would provide the Borrower with additional credit, above the Borrower's other credit limits, subject to certain parameters and limitations. (See id. at ¶¶ 20–21.) However, as a condition of receiving this credit, MidCountry required that each Defendant execute a guaranty (collectively, the "Guaranties"). (See id. at ¶ 22; First Am. Compl. ("MidCountry Compl.") at ¶¶ 9, 11 [Doc. No. 28].) Those Guaranties read, in

3

relevant part, "[T]he total liability of the Guarantor hereunder . . . shall in any event be limited to an aggregate amount equal to the lesser of (i) $750,000 or (ii) the [Borrower's outstanding principal][3]; plus interest on such amount . . . accruing after written demand is made for payment hereunder until such payment is made." (MidCountry Compl. at ¶ 11, Exs. A–C (containing the executed Guaranties) [Doc. No. 29].[4]) Defendants' liability under the Guaranties was triggered if the Borrower did not make "full and prompt payment" of its obligations to MidCountry as they came due. (See MidCountry Compl. at ¶ 12.) MidCountry also required and received an "unlimited personal guarantee" from Kutoff. (Rajchenbach Compl. at ¶ 22.)

     MidCountry and Defendants now disagree about the maximum aggregate liability created by the Guaranties. MidCountry's position is that each Defendant is separately liable for $750,000, for a combined total of $2.25 million. (See MidCountry Compl. at ¶¶ 13–15). Defendants' opinion is that the maximum aggregate liability between them is $750,000. (See Rajchenbach Compl. at ¶¶ 22–23.) Defendants allege that before they signed the Guaranties, Kutoff repeatedly told them that based on his negotiations with MidCountry and an attorney's review of the agreements, the Guaranties created a maximum aggregate liability of $750,000. (Rajchenbach Compl. at ¶¶ 26–27.)

---

[3] The Guaranties contain a formula for determining what this alternative principal amount is. That precise formula is not relevant to the Motions presently before the Court.

[4] The Guaranties appear to be substantively identical except for the names and signing dates. No party argues otherwise. Given these similarities and the fact that all three Guaranties were included as a single attachment, the Court cites to the provision at issue as it appears in Exhibit A on ECF page number 6. (See Doc. No. 29 at 6.)

Ultimately, MPC's operational difficulties continued and it defaulted on its obligations to MidCountry. (Id. at ¶ 31; MidCountry Compl. at ¶ 16.) MidCountry demanded that each Defendant pay $750,000 for a total of $2.25 million. (MidCountry Compl. at ¶ 18; Rajchenbach Compl. at ¶¶ 32–33.) However, Defendants refused to pay this amount. (MidCountry Compl. at ¶ 19.) Instead, Defendants claim that they offered to pay a total of $750,000, consistent with their understanding of the Guaranties, but that MidCountry refused this offer. (Rajchenbach Compl. at ¶ 34.)

Defendants also allege that MidCountry never demanded that Kutoff fulfill his personal guaranty, but instead released him from those obligations. (Id. at ¶¶ 35–36.) According to Defendants, MidCountry released Kutoff from his personal guaranty in exchange for Kutoff, as an officer and director of the Borrower, attempting to direct its assets towards satisfying the Borrowers' MidCountry debts. (See id. at ¶¶ 38–40.)

### B. Procedural History

Based on the facts described above, MidCountry sued Defendants for declaratory judgment, (MidCountry Compl., Count I), breach of contract, (id., Count II), and an alternative claim for unjust enrichment, (id., Count III). Defendants move under Rule 12(b)(6) that all three counts be dismissed. (See generally Mem. of Law in Supp. of Defs.' Rule 12(b)(6) Mot. to Dismiss ("Defs.' Mem. in Supp.") [Doc. No. 31]; Reply in Supp. of Defs.' Rule 12(b)(6) Mot. to Dismiss ("Defs.' Reply") [Doc. No. 42].) MidCountry opposes this motion. (See generally Mem. in Opp. to Mot. to Dismiss ("MidCountry Mem. in Opp.") [Doc. No. 39].)

Defendants also brought a variety of claims against MidCountry and Kutoff, which in relevant part included a claim of fraud against Kutoff. (Rajchenbach Compl., Count IV.) Defendants argue that they and Kutoff believe that the deal Kutoff negotiated with MidCountry was for the Guaranties to impose a maximum aggregate liability of $750,000. (See Rajchenbach Compl. at ¶¶ 20, 23–26, 80.) However, Defendants contend that "*if* Kutoff in fact negotiated an agreement with MidCountry that rendered [Defendants] liable for $2,250,000 instead of the defined $750,000," he intentionally misled and deceived them about this fact. (See id. at ¶¶ 83–84 (emphasis added).) Defendants suggest that if Kutoff did negotiate for this higher aggregate liability amount and misled Defendants, he did so to reduce his own personal obligations to MidCountry. (Id. at ¶ 89.) Defendants also claim that Kutoff lied when he said an attorney reviewed the Guaranties and concluded the aggregate liability was $750,000. (Id. at ¶¶ 81–82.)

Kutoff moves under Rule 12(b)(6) that Defendants' fraud claim be dismissed with prejudice. (See generally Mem. of Law in Supp. of Mot. to Dismiss Count IV ("Kutoff Mem. in Supp.") [Doc. No. 59-43].) Defendants oppose this motion. (Jack Rajchenbach, Chaim Rajchenbach, and Robert Hartman's Opp. to Def. Kutoff's Mot. to Dismiss ("Defs.' Mem. in Opp.") [Doc. No. 59-50].)

II.   DISCUSSION

   A. Standard of Review

When evaluating a motion to dismiss, the Court assumes the facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable

6

to the plaintiff. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). However, the Court need not accept as true wholly conclusory allegations, Hanten v. School District of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions the plaintiff draws from the facts pled, Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." Id. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." Twombly, 550 U.S. at 556.

### B. Defendants' Motion to Dismiss MidCountry's Claims

#### 1. Declaratory Judgment

MidCountry's declaratory judgment claim asks that the Court declare that each Defendant is individually liable to MidCountry for $750,000 for an aggregate liability of $2.25 million. (See MidCountry Compl., Count I at ¶ 26.) Defendants argue that the Court should dismiss this claim for three related reasons. (See Defs.' Mem. in Supp. at 4; Defs' Reply at 1.[5]) First, they contend that declaratory judgment will not resolve the

---

[5] Defendants' Memorandum in Support and Reply contain incorrect pagination beginning on page two of both documents. Therefore, the Court cites to the ECF page numbers.

entire dispute between the parties, including issues like whether Defendants were fraudulently induced to sign the Guaranties. (Defs.' Mem. in Supp. at 4–5.) Second, Defendants argue that declaratory judgment is improper here because resolution of MidCountry's breach of contract claim will address any disputes between the parties regarding aggregate liability under the Guaranties. (Id. at 6–7.) Third, Defendants contend that MidCountry's declaratory judgment claim is duplicative of, or merely a preface for, its breach of contract claim. (Id. at 7–8; Defs.' Reply at 3–4.) MidCountry argues that its declaratory judgment claim is broader than its breach of contract claim, would reduce or eliminate the need for future litigation between the parties, and adds no complexity to the case. (See MidCountry's Mem. in Opp. at 4–7.)

Federal courts may, upon request, declare the legal rights and liabilities of parties to any controversy within their jurisdiction. 28 U.S.C. § 2201(a). "The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57. Declaratory relief is discretionary "and an important factor in exercising that discretion is whether the declaratory judgment plaintiff has another, more appropriate remedy." Gulf Underwriters Ins. Co. v. Burris, 674 F.3d 999, 1004 (8th Cir. 2012) (quotations omitted). Where a party's declaratory judgment claim is purely duplicative of its breach of contract claim, the declaratory judgment claim may be properly dismissed. See MASTR Asset Backed Sec. Trust 2006-HE3 ex rel. U.S. Bank Nat. Ass'n v. WMC Mortgage, LLC, 983 F. Supp. 2d 1104, 1116 (D. Minn. 2013). However, the mere fact that claims for declaratory judgment and breach of contract are

closely related—even where the declaratory judgment claim "encompasses" the breach of contract claim—does not require dismissing the declaratory judgment claim. See Marty H. Segelbaum, Inc. v. MW Capital, LLC, 673 F. Supp. 2d 875, 882 (D. Minn. 2009) ("While plaintiff's claim for a declaratory judgment encompasses its breach of contract claim, the declaratory judgment's scope is broader; were the Court to issue one, it might well delineate all three parties' rights and obligations, as well as resolve plaintiff's breach of contract claim. This goes well beyond any pure contract remedy.").

Here, MidCountry's claims for declaratory judgment and breach of contract are closely related, but the declaratory judgment claim is broader in scope. In short, the declaratory judgment claim will establish what the Defendants' obligations are[6] while the breach of contract claim will resolve whether Defendants breached those obligations in a particular instance. Under these circumstances, the Court cannot conclude that MidCountry's breach of contract claim alone is the more appropriate remedy.

### 2. Breach of Contract

Defendants argue that MidCountry "fails to plead any facts plausibly alleging damages from Defendants' alleged breach of the [Guaranties]." (Defs.' Mem. in Supp. at 8.) They contend that MidCountry merely provides a "formulaic recitation" of the damages element necessary for any breach of contract claim. (Defs.' Reply at 5 (quoting Iqbal, 556 U.S. at 678).) Conversely, MidCountry argues that its pleadings provided the

---

[6] Tellingly, Defendants also seek declaratory judgment to the effect that their aggregate liability is only $750,000. (See Rajchenbach Compl., Count I.)

notice of damages required to sustain a claim for breach of contract. (See MidCountry's Mem. in Opp. at 7–9.)

To sustain a claim for breach of contract, a plaintiff must allege damages resulting from the breach. See Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd., 703 F.3d 1104, 1107 (8th Cir. 2013). Here, MidCountry plainly alleges that as a result of Defendants' breach of the Guaranties, it suffered damages in the amount of $750,000 per Defendant, plus interest, costs, and fees. (See MidCountry Compl. at ¶¶ 18–21, 31.) MidCountry was not required to provide "detailed factual allegations" about the amount of its damages, but instead had to allege facts with enough specificity "to raise a right to relief above the speculative level," which it did. See Twombly, 550 U.S. at 555. To the extent Defendants argue they are entitled to a more precise accounting of MidCountry's alleged damages, they will receive exactly that in MidCountry's Rule 26(a)(1)(A)(iii) disclosures. However, this sort of exactitude is not required for sufficient pleadings.

### 3. Unjust Enrichment

Defendants argue that because the rights and remedies of the parties are governed entirely by contract (i.e., the Guaranties), MidCountry's unjust enrichment claim must be dismissed. (Defs.' Mem. in Supp. at 9–10.) Specifically, Defendants contend that if MidCountry's interpretation of the Guaranties (i.e., that Defendants' aggregate liability is $2.25 million) is incorrect, "[MidCountry] cannot seek to impose additional liability, which it did not bargain for and Defendants' [sic] did not agree to, under an alternative equitable theory." (Defs.' Reply at 8.) MidCountry argues that this is a clear case of

pleading in the alternative and allowed under the Rules. (See MidCountry's Mem. in Opp. at 9–11.)

The Rules explicitly allow for pleading claims for relief in the alternative. Fed. R. Civ. P. 8(a)(3). "Plaintiffs may plead their unjust-enrichment claim in the alternative to their breach-of-contract claim without fear of dismissal." Motley v. Homecomings Fin., LLC, 557 F. Supp. 2d 1005, 1014 (D. Minn. 2008). Although a party may not ultimately recover on both breach of contract and unjust enrichment claims, it may pursue these alternative theories until it is conclusively decided "that a valid and enforceable contract exists between the parties which governs the specific dispute before the court." Spectro Alloys Corp. v. Fire Brick Engineers Co., 52 F. Supp. 3d 918, 932 (D. Minn. 2014).

Here, MidCountry's unjust enrichment claim is clearly pled in the alternative. (See MidCountry Compl., Count III (entitled "Alternative Claim for Unjust Enrichment").) MidCountry avers that it will only pursue its unjust enrichment claim if "the Court finds there is no binding, enforceable contract" between the parties. (MidCountry's Mem. in Opp. at 11.) Although the parties do not appear to dispute that the Guaranties are enforceable contracts (instead disagreeing about the terms of the Guaranties), the Court has made no finding to this effect. If and when such a finding is made, likely on summary judgment, MidCountry's unjust enrichment claim will be dismissed, but not until then.

### C. Kutoff's Motion to Dismiss Defendants' Fraud Claim

Kutoff advances three related arguments why Defendants' fraud claim should be dismissed. (See Kutoff Mem. in Supp. at 12–18.) First, Kutoff claims that Defendants fail to allege he knew, or could have known, that MidCountry would later "interpret" the Guaranties to impose an aggregate liability of $2.25 million. (See id. at 12–15.) Kutoff believes the Guaranties imposed an aggregate liability of $750,000, as he communicated to Defendants during his bargaining with MidCountry. (See id.) Second, Kutoff argues that any alleged misrepresentation about the aggregate liability of the Guaranties was not "material" because the Guaranties in fact limit Defendants' aggregate liability to $750,000. (See id. at 15–16.) Similarly, Kutoff claims that his alleged misrepresentation about having legal counsel review the Guaranties was not material because Defendants do not allege they would have acted differently had they known no such review occurred. (See id.) Third, Kutoff contends that to the extent Defendants allege he made misrepresentations about the existence of a secret agreement with MidCountry setting a higher aggregate liability, they could not reasonably rely on his alleged misrepresentation because the Guaranties in fact limited liability to $750,000. (See id. at 16–18.)

In opposition, Defendants make several arguments. (See Defs.' Mem. in Opp. at 5–11.) First, they claim that the fact Kutoff shares their opinion about the aggregate liability of the Guaranties (i.e., $750,000) does not warrant dismissing the fraud claim against him. (See id. at 5–6.) Defendants note that the fraud claim is based on their "alternative allegation" that if this opinion is wrong, Kutoff negotiated a "different agreement with MidCountry that provided that the [Guaranties] rendered [Defendants']

liable in the aggregate for $2,225,000." (Id. at 7.) Defendants contend that this "alternative allegation" is pled with the specificity required by Rule 9(b). (Id. at 7–8.) Second, Defendants clarify that their fraud claim is not based on Kutoff's alleged misrepresentation about an attorney review of the Guaranties, but rather on his alleged misrepresentation about the aggregate liability of the Guaranties. (See id. at 8–10.) Defendants argue that the alleged misrepresentations about aggregate liability were plainly material to their decision to sign the Guaranties. (See id.) Third, Defendants contend that they reasonably relied on these misrepresentations. (See id. at 10–11.)

> In Minnesota, a claim for fraudulent misrepresentation requires:
>
> (1) a false representation by [the defendant] of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made without knowing whether it was true or false; (3) with the intention to induce [the plaintiff] to act in reliance thereon; (4) that the representation caused [the plaintiff] to act in reliance thereon; and (5) that [the plaintiff] suffered pecuniary damages as a result of the reliance.

Valspar Refinish, Inc. v. Gaylord's, Inc., 764 N.W.2d 359, 368 (Minn. 2009). Claims of fraud must be pled with particularity. Fed. R. Civ. P. 9(b). In order to provide the notice required under Rule 9(b), a plaintiff must plead "the who, what, when, where, and how: the first paragraph of any newspaper story." Summerhill v. Terminix, Inc., 637 F.3d 877, 880 (8th Cir. 2011). "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy [Rule 9(b)]." BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007). "Although Rule 9(b) allows '[m]alice, intent, knowledge, and other conditions of a person's mind' to be 'alleged generally,' this does not mean a plaintiff may base a fraud claim on 'speculation and conclusory

allegations.' Instead, plaintiffs must 'allege facts that give rise to a strong inference of fraudulent intent.'" Cmty. Voice Line, LLC v. Great Lakes Commc'n Corp., 295 F.R.D. 313, 322 (N.D. Iowa 2013), aff'd sub nom. Cmty. Voice Line, L.L.C. v. Great Lakes Commc'n Corp., No. C 12-4048-MWB, 2014 WL 272646 (N.D. Iowa Jan. 23, 2014) (quoting Brown v. N. Cent. F.S., Inc., 987 F. Supp. 1150, 1156 (N.D. Iowa 1997)).

The parties' arguments miss the more fundamental problem with the pleading of Defendants' fraud claim—Defendants offer nothing more than conclusory allegations and speculation about Kutoff's fraudulent intent in making the alleged misrepresentations. The fact that Kutoff and Defendants to this day agree that the Guaranties impose an aggregate liability of $750,000, well-documented in Defendants' own pleadings, (see Rajchenbach Compl. at ¶¶ 20, 23–26, 80), is evidence Kutoff did not intend to deceive Defendants. Defendants' "alternative allegation"—that Kutoff, motivated to reduce his own personal liabilities to MidCountry, negotiated some "different agreement" whereby the Guaranties actually imposed an aggregate liability of $2.25 million on Defendants—is purely speculative and unsupported by any facts. (See id. at ¶¶ 83–84.) Defendants' allegations might support an alternative theory that if the Guaranties impose an aggregate liability of $2.25 million, Kutoff did a poor job negotiating those agreements. However, that claim is distinct from fraudulent misrepresentation precisely because the intent element is missing.

The Court dismisses Defendants' fraud claim without prejudice since it is plausible that the deficiency described above could be remedied.

III. ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. The Motion to Dismiss of Jack Rajchenbach, Chaim Rajchenbach, and Robert Hartman [Doc. No. 31] is **DENIED.**

2. Avraham D. Kutoff's Motion to Dismiss Count IV [Doc. No. 59-41] (Doc. No. 41 of case number 15-cv-4193) is **GRANTED IN PART AND DENIED IN PART** as follows:

    a. Count IV (fraud) of the Rajchenbach Complaint [Doc. No. 59-29] is **dismissed without prejudice**.


Dated: May 31, 2016              s/ Susan Richard Nelson
                                 SUSAN RICHARD NELSON
                                 United States District Judge